# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## SEARCH WARRANT

TO: __Chief, United States Park Police or any other sworn law enforcement officer__
(Specific law Enforcement Officer or Classification of Officer of the Metropolitan Police Department or other Authorized Agency)

AFFIDAVIT, herewith attached, having been made before me by __Inv. David Hurley, USPP, Badge 636__ that he has probable cause to believe that on the __premises__ known as 4108 3rd Street, Northwest, Washington, D.C. 20011 as described more fully in the Affidavit in Support of a D.C. Superior Court Search Warrant which is incorporated herein by reference in the District of Columbia, there is now being concealed property, namely documents, monies, packaging materials pertaining to illegal drug trade ;

WHICH IS __in violation of D.C. Code §48-904.01(a)(1)__ and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the above designated __premises__ and that the foregoing grounds for issuance of the warrant exist.

YOU ARE HEREBY AUTHORIZED within 10 days of the date of issuance of this warrant to search in the daytime/at any time of the day or night, the designated __premises__ for the property specified, and if the property be found there

YOU ARE COMMANDED TO SEIZE IT, TO WRITE AND SUBSCRIBE in an inventory of the property seized, to leave a copy of this warrant and return, and to file a further copy of this warrant and return with the Court on the next Court day after its execution.

Issued this __28th__ day of __December__, 20__05__      _____
Judge, Superior Court of the District of Columbia

---

## RETURN

I received the above warrant on __December 28__, 20__05__ and have executed it as follows: On __January 5__, 20__06__ at __6:41__ AM., I searched the __premises__ described in the warrant and I left a copy of the warrant and return with __kitchen of warrant site__ properly posted.
(name of the person searched or owner, occupant, custodian or person present at place of search)

The following is an inventory of the property taken pursuant to this warrant:

DRUG PARAPHERNALIA (scales, baggies)      9 MM HANDGUN, LOADED
DOCUMENTS TO OWUSU-SAKYI + ASANTE        .38 CAL REVOLVER, LOADED
SUSPECTED PROCEEDS: $51,285.             AMMUNITION
APX 5,036 GRAMS MARIJUANA
APX. 60 GRAMS CRACK COCAINE
APX 190 GRAMS POWDER COCAINE

This inventory was made in the presence of __INV. HURLEY, INV. KENESS, DET. HANSEN__

I swear that this is a true and detailed account of **all** property taken by me under this warrant.

_____
Executing Officer

Subscribed and sworn to before me this __6__ day of __Ja___, 20__06__

_____
Judge, Superior Court of the District of Columbia



Orig Mel
2005076/05
12/28/05

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

### 4108 3rd Street, Northwest
### Washington, D.C. 20011

1.   This affidavit is submitted in support of an application for a search warrant for the entire premises known as 4108 3rd Street, Northwest, Washington, D.C. The residence is located in the 4100 block of 3rd Street, Northwest, Washington D.C. The 4100 block of 3rd Street, Northwest, Washington, D.C. is bordered to the west by 4th Street, to the north by Upshur Street, and to the south by Taylor Street. The US Soldiers and Airman's Home is to the east. The residence known as 4108 3rd Street, Northwest, Washington, D.C. is more particularly described as a two-story red brick rowhouse with white railing and a brown door. The numerals "4108" appear in gold to the left of the front door on a brown background. The house is on the west side of 3rd Street.

2.   Your affiant is David A. Hurley, sworn police officer with the United States Park Police since October, 1992. Your affiant is assigned to the Criminal Investigations Branch as an Investigator with the Narcotics and Vice Unit, Washington, D.C. Field Office. During your affiant's tenure as an officer, your affiant has been involved in excess of 700 drug related arrests. Through this experience in narcotics enforcement your affiant has learned about the methods and behaviors of individuals who distribute illicit drugs, to include the methods of concealment, packaging and distribution of various narcotic controlled substances. Additionally, your affiant has been involved in the investigation of firearms violations leading to the recovery of more than 50 firearms. Your affiant has performed in approximately 70 undercover purchases of various illegal drugs, including crack cocaine. Your affiant has been involved in the preparation and execution of more than 80 narcotic and firearm related search warrants, many of which have resulted in the seizure of illicit narcotics, firearms and associated paraphernalia, monetary assets and other contraband related to ongoing criminal enterprises of the drug trade. The following set of facts and circumstances set forth in this affidavit are based on your affiant's personal knowledge, observations and investigation or those of investigators working with the affiant.

3.   On 12/26/05 at approx. 9:39 PM Officer Pacileo of the United States Park Police District 3 station stopped a Volkswagen vehicle with Maryland tags in violation of DC window tint law at 14th and Columbia Road NW, Washington DC. As the driver, Michael Owusu-Sakyi, rolled down his window, Officer Pacileo detected a strong odor of fresh and burnt marijuana. Owusu-Sakyi was identified through his Virginia drivers license. He was asked to step from the vehicle. As

_____
(signature)

SUBSCRIBED AND SWORN TO BEFORE ME THIS 28th DAY OF December 2005

_____
Melvin R Wright
JUDGE, SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

officers attempted to detain Owusu-Sakyi, he became combative and attempted to flee from officers, who caught him. Owusu-Sakyi threw several punches at officers, and continued resistance, even after handcuffing. He managed to remove a plastic baggie from his jacket and attempted to conceal it under a nearby car. Officers eventually got him under control and stopped his attempts to flee. The plastic bag was recovered and contained 3 other plastic baggies with a green vegetable matter, which subsequently field-tested positive for THC, the active ingredient in marijuana. The total weight was approximately 93.7 grams or about 3.3 ounces. Owusu-Sakyi was arrested and processed at US Park Police District 3 and later charged with PWID Marijuana and Assault on Police Officers, who suffered abrasions on-scene.

4. Owusu-Sakyi possessed documents in his vehicle listing 4108 3rd Street, Northwest, Washington DC as his address. These included: an ADT Security company bill for security services invoice date of 1/1/06; a Commonwealth of Virginia barber's license (with the 3rd Street address) expiring on 3/31/07; a Pepco bill issued 11/21/05 to "Michael Sakyi" and "Kofi Asante"; a credit collection notice with his name and address in Northwest.

5. The amount of marijuana recovered from Owusu-Sakyi's person indicates an amount used for distribution, especially given the 3 separate packages of approximately 1 ounce each (a standard amount of marijuana to sell) based on your affiant's prior training and experience.

6. Owusu-Sakyi also possessed approximately $1300. in cash at the time of arrest. The denominations were mostly 20-dollar bills. This would also be an indication that the arrestee is involved in marijuana sales, as marijuana is often sold in the District in "doubs" or 20-dollar bags.

7. A record check in the Interstate Identification Index revealed that Owusu-Sakyi has prior contacts with law enforcement for marijuana and officer obstruction charges. These include charges in Fairfax County, Virginia General District Court for Possession Marijuana with Intent to Distribute in 1995; Possession with Intent to Distribute Marijuana in Fairfax County Circuit Court in 1996; a revocation of suspended sentence and probation for the same charge; and Possession of a Controlled Substance/Exchange in Nashville in 2004. In 2003 officers in Atlanta arrested him for DUI and Obstruction of Officers. All of these show a pattern for Owusu-Sakyi of involvement with distribution-level amounts of marijuana as well as being less than cooperative with law enforcement officers.



SUBSCRIBED AND SWORN TO BEFORE ME THIS 28th DAY OF December 2005

_____
JUDGE, SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

8.  Your affiant knows from prior experience that drug distributors often use their homes, the homes of acquaintances, and vehicles as "stash" areas to conceal illegal drug proceeds, documents and other assorted papers used to record sales of drugs, ownership and occupancy of residence and vehicles, and to document the proceeds earned. Your affiant knows it is not unusual for drug distributors to have firearms available for their protection from competitors or police. Your affiant also knows from prior experience and training that it is not unusual for illegal drug distributors to have property (e.g. vehicles, residences) registered in the name of third parties. Your affiant believes from the subject's actions, specifically, attempting to flee and elude police, taken together with the amount of marijuana and cash recovered from his person, that he is currently engaged in the illegal drug trade.

9.  The subject, or someone known to the subject, has taken an active step toward protecting the address of 4108 3rd Street, Northwest, Washington DC from outsider entry, be it police or others, based on the security bill for that address. This may be an indication of the presence of illegal property or proceeds the arrestee wishes to safeguard.

10. Based on the aforementioned information and your affiant's experience and training in narcotics related investigations, your affiant believes probable cause exists that there are documents and assorted papers used to record sales of drugs, ownership and occupancy of residence and vehicles, and documenting the proceeds earned, as well as further packaging materials and paraphernalia at 4108 3rd Street, Northwest, Washington, D.C., in violation of the controlled substances laws of the United States and of the District of Columbia. Therefore, your affiant respectfully requests a warrant be issued authorizing the seizure of any such items pertaining to illegal drug sales in this location.

SUBSCRIBED AND SWORN TO BEFORE ME THIS 28th DAY OF December 2005

JUDGE, SUPERIOR COURT OF THE DISTRICT OF COLUMBIA.

Slip Copy  
Slip Copy, 2006 WL 516743 (D.D.C.)  
(Cite as: 2006 WL 516743 (D.D.C.))  
**H**

Page 62

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, District of Columbia.  
UNITED STATES OF AMERICA  
v.  
Gerald EILAND, et al., Defendants.  
No. CRIM.04-379(RCL).

March 2, 2006.  
Edward Charles Sussman, Washington, DC, for Defendants.

*MEMORANDUM OPINION*

LAMBERTH, J.

\*1 This matter comes before the Court on the pre-trial motions of defendants. The motions fall into several different categories: motions relating to discovery; motions to dismiss; motions to join or adopt the motions of co-defendants; motions for leave to late file; motions to suppress or for a *Franks* hearing; and other miscellaneous motions.

First, several defendants filed motions relating to discovery matters. Defendant Eiland filed, on February 3, 2006, the following motions: a Request [520] for Notice of Government's Intention to Use Rule 404(b) Evidence at Trial; a Motion [523] for Disclosure of Co-Defendant Statements Pursuant to *United States v. Bruton;* and a Motion [524] to Compel Disclosure of Information Regarding Confidential Informants, Witnesses & Cooperating Criminals. Defendant Eiland also filed two motions [346, 526], on August 2, 2005 and February 3, 2006, respectively, Requesting the Names of Counsel Who Represent Government Witnesses. Defendant Thomas filed, on February 6, 2006, the following motions: a Motion [537] for Bill of Particulars; a Motion [538] to Compel Disclosure of Evidence Subject to Suppression Under Fed.R.Crim.P. 12(b)(3); a Motion [540] for Disclosure of Favorable Evidence Against Witnesses not Called by the Government; a Motion [541] to Disclose Identity of Confidential Informants; a Motion [542] to Disclose All Instances Where Witnesses Were Interviewed Jointly; a Motion [543] for Discovery of Statements of Co-Defendants and Co-Conspirators; a Motion [546] for Early Release of Jencks, *Brady & Giglio* Material; a Motion [549] for Disclosure of Government's Intention to Introduce 404(b) Evidence at Trial; a Motion [550] for Notice of Government's Intention to Invoke Residual Hearsay Exception Under Rule 803(24); and a Motion [578] to Compel Disclosure of Witness Exposure to Wiretap Evidence.

Defendant Miller filed, on February 6, 2006, two Motions [530, 532] to Compel Pretrial Production of Co-Defendant Statements that Arguably Implicate Him; defendant Miller also filed, on April 25, 2005, a Motion [211] for Bill of Particulars; defendant Plummer filed, on February 2, 2006, a Motion [518] to Disclose Identity of Informants; defendant Moore filed, on January 30, 2006, a Motion [502] to Direct the Government to Provide Notice of its Intention to Rely on Other Crimes, Wrongs, Acts & Misconduct Evidence; defendant Moore also filed, on November 18, 2004, a Motion [151] for Bill of Particulars or to Dismiss; defendant Butcher filed, on February 6, 2006, a Motion [535] for Notice Regarding Intrinsic Evidence; a Motion [555] for Pretrial Ruling on the Admissibility of Conspirator Statements and for Disclosure of Those Statements; and, on September 30, 2005, a Motion [393] for Discovery of Statements by and Identities of Government Informers. Defendant Ingram filed, on January 26, 2006, a Motion [499] for an Order Directing the Government to Provide Impeachment Evidence as to All Hearsay Declarants; defendant Gaskins filed, on January 25, 2006, a Motion [491] for Disclosure of 1006 Summaries; and, on September 17, 2005, a Motion [386] for 404(b) Evidence; and defendant Bryant filed, on November 3, 2005, a Motion [419] for 404(b) Evidence.

\*2 Second, defendant Thomas filed, on February 6, 2006, three motions requesting dismissal of counts, evidence and/or the indictment: a Motion [544] to Dismiss Counts & Overt Acts of Indictment Due to Improper Language; a Renewed Motion [545] to Dismiss Fourth Superseding Indictment or, in the Alternative, for Release of Grand Jury Ministerial Records; and a Motion [548] to Dismiss Due to Lost or Destroyed Evidence.

Third, several defendants moved to join or adopt the motions of their co-defendants. Defendant



© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: 2006 WL 516743, *2 (D.D.C.))

Page 63

Butcher filed, on January 30, 2006, a Motion [508] for Leave to Join Co-Defendants' Motions; on February 6, 2006, a Motion [533] to Join Co-Defendants' Motions; and on February 23, 2006, a Third Motion [581] to Join Co-Defendants' Motions. Defendant Eiland filed, on February 3, 2006, a Request [525] to Adopt Motions of Co-Defendants; and, on February 15, 2006, a Notification [566] to the Court of Co-Defendant Motions that He Seeks to Adopt. Defendant Gaskins filed, on February 6, 2006, a Motion [536] for Leave to Adopt & Join Motions of Co-Defendant Eiland; on February 7, 2006, a Motion [556] for Leave to Adopt & Join Motions of Co-Defendant Thomas and a Motion [557] for Leave to Adopt & Join Motions of Co-Defendant Butcher; and, on June 5, 2005, a Motion [296] to Join Co-Defendant Simon's Motion [291] for Disclosure of Confidential Informants and Exculpatory Information. Defendant Ingram filed, on February 7, 2006, a Motion [558] for Leave to Adopt & Join Particular Motions Filed by Co-Defendants; defendant Moore filed, on February 15, 2006, a Motion [565] for Leave to Adopt & Join Motions Filed by Co-Defendants; defendant Plummer filed, on February 2, 2006, a Motion [517] to Join & Adopt Certain Motions Filed by Co-Defendants; and defendant Thomas filed, on February 6, 2006, a Motion [547] for Leave to Join Co-Defendant Motions.

Fourth, several motions were filed requesting leave of the Court to late file. Defendant Miller filed, on February 5, 2006, a Motion [529] for Leave to File Defendant's Motions Out of Time. The United States filed, on February 14, 2006, a Motion [564] for Extension of Time in Which to File Responses to Defendants' Pretrial Motions and for Other Motions Procedures; and on February 22, 2006, a Motion [576] for Leave to File Opposition to Defendant Moore's Supplemental Motion, Time for Filing Having Expired.

Fifth, defendants filed several motions requesting that evidence be suppressed, or that a *Franks* hearing be held. Defendant Eiland filed, on February 3, 2006, a Motion [521] to Suppress Evidence Seized from 2801 Park Center Drive, Apt. A604 and a Motion [522] to Suppress Evidence Seized from a 2003 Chevrolet Conversion Van. Defendant Miller filed, on February 6, 2006, a Motion [531] to Suppress Evidence; defendant Moore filed, on November 11, 2005, a Motion [425] to Suppress Evidence or for *Franks* Hearing; and, on January 26, 2006, a Supplemental Motion [497] to Suppress or for a *Franks* Hearing; defendant Thomas filed, on February 6, 2006, a Motion [539] for Suppression of Consensual Calls and a Motion [551] to Suppress Tangible Evidence; and defendant Gaskins filed, on January 25, 2006, two Motions [490, 492] to Suppress Physical Evidence.

*3 Sixth, several motions relating to miscellaneous matters were filed. Defendant Miller filed, on February 6, 2006, a Motion [534] to Sever Defendants; [FN1] defendant Moore filed, on January 30, 2006, a Motion [503] for Recusal; on February 16, 2006, a Motion [567] to Proceed *Pro Se* with the Assistance of Standby Counsel; and, on January 26, 2006, a Motion [498] to Transfer Due to Prejudicial Publicity; defendant Thomas filed, on February 6, 2006, a Motion [552] for Implementation of Trial Procedures and a Motion [553] *in Limine* Regarding Admission of Wiretap Calls.

> FN1. While defendant Miller's Motion is titled "Defendant Christian Byrd's Motion to Sever Defendants," the Court assumes that the name of another defendant in the title is the result of a typographical error; accordingly, it shall consider the motion as it applies to defendant Miller.

The United States filed an Omnibus Opposition [568] to defendants' pre-trial motions on February 17, 2006, and defendants Gaskins [574] and Thomas [575] filed replies thereto on February 19, 2006 and February 22, 2006, respectively. The Government also filed, on February 22, 2006, a Supplemental Opposition [577] to Defendant Moore's Supplemental Motion to Suppress; on January 30, 2006, a Consolidated Notice [507] Regarding Rule 609 Evidence; and, on March 1, 2006, a Supplement [589] to its Omnibus Response. Defendant Gaskins filed, on February 6, 2006, an Opposition [554] to the Government's Consolidated Notice [507] Regarding Rule 609 Evidence. The Government had previously filed, on October 19, 2005, an Opposition [409] to Defendant Butcher's Motion to Compel Disclosures Regarding Government Informers, to which defendant Butcher filed a Reply [418] on November 3, 2005. All parties appeared before this Court for a hearing on February 23-24, 2006.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: 2006 WL 516743, *3 (D.D.C.))

Page 64

Upon a thorough review of each party's filings, the applicable law and the entire record herein, this Court has determined that all motions [296, 508, 517, 536, 547, 556, 557, 558, 565, 566, 581] to join or adopt specified motions of co-defendants shall be GRANTED; defendant Eiland's motion [525] to join or adopt unspecified motions of co-defendants shall be DENIED; defendant Butcher's Motion [533] to join shall be GRANTED IN PART as to those motions he specifies, and DENIED IN PART as to his general request to join all motions for which he has standing; all motions [529, 564, 576] for leave to late file shall be GRANTED; two motions [491, 538] relating to discovery shall be GRANTED; all other motions relating to discovery [151, 211, 346, 386, 393, 419, 499, 502, 518, 520, 523, 524, 526, 530, 532, 535, 537, 540, 541, 542, 543, 546, 549, 550, 555, 578] shall be DENIED; all motions to dismiss [151, 544, 545, 548] shall be DENIED; all motions [425, 490, 492, 497, 521, 522, 531, 539, 551] to suppress or for a *Franks* hearing shall be DENIED.

As to the miscellaneous motions, defendant Miller's Motion [534] to Sever Defendants shall be DENIED; defendant Moore's Motion [503] for Recusal shall be DENIED; defendant Moore's Motion [498] to Transfer Due to Prejudicial Publicity shall be DENIED; and defendant Thomas' Motion [553] *in Limine* Regarding Admission of Wiretap Calls shall be DENIED. Defendant Moore's Motion [567] to Proceed *Pro Se* with the Assistance of Standby Counsel shall be GRANTED; and defendant Thomas' Motion [552] for Implementation of Trial Procedures shall be GRANTED IN PART and DENIED IN PART.

*I. BACKGROUND*

*4 The defendants are charged in a 96-count Fourth Superseding Indictment ("Indictment"). All nine defendants currently pending trial are charged in Count One, Narcotics Conspiracy and in Count Two, RICO Conspiracy. Defendants Eiland and Miller are charged also in Count Three, Continuing Criminal Enterprise. At least one but not all remaining defendants are also charged with the following: possession with intent to distribute narcotics (Counts 8-9, 11- 13, 15-16); distribution of narcotics (Count 10); use of a communications facility to facilitate possession with intent to distribute narcotics (Counts 17-76); interstate trafficking of stolen motor vehicles (Counts 77-89); conspiracy to commit murder (Count 90, 93); first degree murder as accessory after the fact (Count 91); accessory to murder after the fact (Count 92); murder conspiracy in aid of racketeering activity (Count 94); and firearms offenses (Counts 95-96). The defendants have been separated into two groups for trial: the first shall commence on March 6, 2006 and the second begins on September 6, 2006.

*II. DISCUSSION*
*A. Motions Relating to Discovery Matters*

*1. Motions Requesting Notice of Government's Intention to Use 404(b) Evidence*

Defendants Gaskins [386], Bryant [419], Moore [502], Eiland [520], Thomas [549] each filed motions requesting disclosure of the Government's intention to use 404(b) evidence at trial. In addition to requesting notice of the intended use of such evidence, they also request that the evidence be limited to rebuttal or excluded altogether due to its prejudicial effect. (Gaskins' Mot. [386] 1-3; Bryant's Mot. [419] ¶¶ 1-4; Moore's Mot. [502] ¶¶ 1-6; Eiland's Mot. [520] 1-3; Thomas' Mot. [549] 1-3.) The Government asserted that the evidence that it seeks to admit at trial will not fall within the ambit of Rule 404(b). (Govt.'s Omnibus Opp'n 35.) Evidence of defendants' uncharged criminal conduct will be admissible to prove the conspiracies and offenses committed in furtherance thereof. (*Id.*) As such, the acts are "inextricably intertwined" with the charged crime; and as a result are not subject to Rule 404(b) analysis. (*Id.*)

Rule 404(b) is intended to prevent the admission of evidence of other crimes, wrongs or bad acts that have no evidentiary bearing on the charges at issue when such are admitted for the purpose of demonstrating the bad character of the defendant. The rule excludes only that evidence that is "extrinsic" or "extraneous" to the charged crime. *United States v. Badru*, 97 F.3d 1471, 1474 (D.C.Cir.1996). Evidence is not considered extrinsic or extraneous "if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime...." *Badru*, 97 F.3d at 1474 (citing *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir.1983)). "As long as evidence of the uncharged criminal conduct is offered as direct evidence of a fact in issue, and not as circumstantial evidence of the character of the accused, it is admissible independent of its superficial similarity to that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: 2006 WL 516743, *4 (D.D.C.))

Page 65

which would be considered evidence of 'other crimes' under Rule 404(b)." *United States v. Gray,* 292 F.Supp.2d 71, 77-78 (D.D.C.2003) (Lamberth, J.) (citing *Badru,* 97 F.3d at 1475 (citing 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5239 at 450 (1978))).

*5 In this case, the Government stated that the evidence it will introduce at trial does not fall under the definition of Rule 404(b). (Govt.'s Omnibus Opp'n 35.) Although it intends to introduce evidence of defendants' criminal wrongdoing that does not relate directly to other incidents charged in the indictment, as long as that evidence is offered to prove the existence of the conspiracy rather than a defendant's propensity to commit crimes, it will not fall under Rule 404(b). *Badru,* 97 F.3d at 1475. The Government has indicated that, should it seek to introduce evidence falling under Rule 404(b), it will notify the Court and opposing counsel. Accordingly, defendants' motions shall be DENIED.

2. *Motions Requesting Disclosure of Rule 801(d)(2)(E) Statements*

Defendants Eiland [523] and Miller [530, 532] [FN2] request that the Government be required to disclose statements made by co-defendants in this matter. Defendant Miller also moves to suppress any such statements. Defendant Thomas [543] seeks the same and also any statements made by co-conspirators. Defendant Butcher [555] seeks disclosure of co-conspirator statements and requests a pretrial hearing to determine their admissibility. Defendants Ingram [499] and Thomas [540] request that the Government disclose any evidence that impeaches witnesses whose testimony will be introduced pursuant to Rule 801(d)(2)(E).

> FN2. While defendant Miller filed two separate motions, they are identical. Cited page numbers, therefore, may refer to either.

As to statements by co-defendants, defendants argue that, since such statements cannot be introduced in a joint trial where the declarant does not take the stand, the Government must disclose its intention to use any such statements before trial so that opposing counsel may have the opportunity to litigate any limitations on the admissibility of such statements. (Eiland's Mot. [523] ¶¶ 1-4; Miller's Mot. [530, 532] 1-2.) Defendants Thomas and Butcher request disclosure of statements by co-conspirators (and co-defendants, in defendant Thomas' motion) that the Government intends to introduce under Rule 801(d)(2)(E). (Thomas' Mot. [543] 1-2; Butcher's Mot. [555] ¶¶ 1-7.) In the interest of judicial economy and reducing the likelihood of a mistrial, defendant Butcher argues, the statements' admissibility must be determined before trial. (Butcher's Mot. [555] ¶¶ 4-7.) Finally, defendants Ingram and Thomas also argue that, in order to prepare impeachment, the Government should disclose before trial any evidence that would impeach hearsay declarants whose statements are admitted under Rule 801(d)(2)(E). (Ingram's Mot. [499] 1-3; Thomas' Mot. [540] 1.)

The Government contends that *Bruton* only applies to statements by co-defendants that expressly implicate other defendants. (Govt.'s Omnibus Opp'n 29.) Furthermore, the Government notes, while *Bruton* applies to statements that lack other basis for admission, it has no relevance for statements admitted under one of the exceptions to the hearsay rules. (*Id.*) The Government represents that it will seek to admit only those statements that have an independent basis for admissibility. (*Id.* at 30.) Similarly, the Government asserts that it is not required to disclose co-conspirator statements prior to trial other than as required by the Jencks Act or *Brady.* (*Id.* at 31.) As to defendants' request for a pretrial determination of admissibility of co-conspirator statements under Rule 801(d)(2)(E), and their request for pretrial disclosure of impeachment evidence of any such declarants, it is the Government's position that neither must occur in advance of trial. (*Id.* at 32, 47.)

*6 As to defendants' request for disclosure of *Bruton* statements, this Court finds that the request is moot, since the Government does not intend to attempt to introduce evidence prohibited under Bruton. As to other statements and impeachment evidence, this Court finds no basis for requiring pretrial disclosure of those statements. The Government is not generally required to disclose co-conspirator statements or impeachment evidence for hearsay declarants, nor is there reason for the Court to engage in a pretrial determination of whether Rule 801(d)(2)(E) is satisfied, before trial begins. *See United States v. Tarantino,* 846 F.2d 1384, 1418 (D.C.Cir.1988) (approving district court's rejection of defendant's request for pretrial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: 2006 WL 516743, *6 (D.D.C.))

Page 66

discovery of co-conspirator statements as being without authority under the Federal Rules or the Jencks Act). Accordingly, defendants' motions requesting pretrial disclosure and determination of admissibility of co-defendant and co-conspirator statements, and their motions requesting pretrial disclosure of impeachment evidence for hearsay declarants, shall be DENIED.

*3. Motions for Disclosure Relating to Confidential Informants*

Defendants Simon [FN3] [291], Butcher [393], Eiland [524], Plummer [518], and Thomas [541] have requested information regarding confidential informants. Defendant Eiland requests the investigating agency's internal file on each informant so that he might be able to identify the individuals and know what benefits they might receive in exchange for their testimony. (Eiland's Mot. [524] 2-4.) Defendants state that the Government's failure to disclose this information will hamper preparation of the defense. (Eiland's Mot. [524] 2; Plummer's Mot. [518] 5; Simon's Mot. [291] 6.) Defendant Butcher requests disclosure of any exculpatory statements. (Butcher's Mot. [393] 1, 6; Butcher's Reply [418] ¶ 7.) Defendant Thomas asserts that the Government is required to produce all confidential informants and allow him to interview them before trial. (Thomas' Mot. [541] 1-3.) In the alternative, defendant Thomas requests that the Court hold an *in camera* hearing to determine whether any informant's testimony might be helpful and material to the defense. (*Id*. at 3-4.) Defendant Thomas also requests that 20 pieces of information relating to each informant be disclosed prior to trial. (*Id*. at 5-7.)

> FN3. Although defendant Simon is no longer an active defendant in this case, and this motion has since been terminated, his motion will be considered as it applies to defendant Gaskins, who moved [296] to join the motion.

The Government opposes disclosure on the grounds that it is privileged from doing so. (Govt.'s Omnibus Opp'n 43.) It argues that, in light of the public interest in protecting informants' safety, pretrial disclosure of their identities should be mandated only when it is necessary and relevant to the defense. (*Id*.; Govt.'s Opp'n [409] 2.) It also notes that none of the prospective testimony of the informants is exculpatory. (Govt.'s Omnibus Opp'n at 44.)

This Court finds that defendants have not provided a basis to compel disclosure of the identities of confidential informants, or of other the information requested. Under the balancing test mandated by *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), defendants have not shown that their need for the information outweighs the danger to informants, were their identities revealed. *See United States v. Warren,* 42 F.3d 647, 654 (D.C.Cir.1994). Since there is no indication that any informant has provided information that would be exculpatory to defendants, defendants' need for the information is not substantial. *See id*. at 654-55 (noting that mere speculation of exculpatory testimony "cannot overcome the Government's strong interest in preserving the confidentiality" of an informant). Moreover, the dangerous nature of the crimes with which defendants are charged increases the danger to informants whose identities are revealed. The Government has assured the Court and defense counsel that it will disclose all necessary information, should circumstances arise that mandate disclosure, either before or during the trial. This Court is satisfied that the Government's effort is sufficient to satisfy its obligations as to disclosure of confidential informants. Defendants' motions for disclosure, therefore, shall be DENIED.

*4. Motions for Bills of Particulars and for Disclosure of Intrinsic Evidence*

*7 Defendants Moore [151], Miller [211], Simon [291] [FN4] and Thomas [537] request an order directing the Government to provide a bill of particulars. Defendants argue that the vagueness with which the Government described the acts charged prevent them from preparing a defense. (Moore's Mot. [151] 6; Simon's Mot. [291] 8; Thomas' Mot. [537] 1-3.) Defendant Butcher [535] requests that the Government reveal any acts not specifically alleged in the indictment that it will seek to introduce at trial. (Butcher's Mot. [535] 1.) Failure to do so, he asserts, will deprive him of the ability to prepare a defense. (*Id*. at 2.)

> FN4. As noted *supra* note 3, although defendant Simon is no longer an active defendant in this case, his motion shall be considered as it applies to defendant Gaskins, who moved [296] to join the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: 2006 WL 516743, *7 (D.D.C.))

Page 67

motion.

The Government maintains that the broad and detailed indictment as well as extensive discovery already provided to the defense are sufficient to permit defendants to prepare for trial. (Govt.'s Omnibus Opp'n 38.) According to the Government, the circumstances under which a bill of particulars is required-- namely, a lack of precision as to charged offenses--are simply not present here. (*Id.* at 38-42.)

This Court finds that defendants' requests are without merit. A bill of particulars is necessary when the existing documents fail to provide sufficient detail for defendants to "understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler,* 822 F.2d 1191, 1193 (D.C.Cir.1987). Here, defendants have been provided with voluminous information, including great detail, about the charges that have been brought against them. The indictment in this case is extremely specific, providing more than 200 factual statements alleged as overt acts and 30 racketeering acts. Similarly, extensive discovery has been made available to defendants, including many recordings, images, documents and reports. Defendants have provided no basis for requiring further disclosure at this point. Accordingly, their motions for bills of particulars and for disclosure of intrinsic evidence shall be DENIED.

*5. Requests for Disclosure of Counsel Representing Government Witnesses*

Defendant Eiland filed two motions [346, 526] requesting that the Government be required to disclose the names of attorneys representing government witnesses whose names are provided by defense counsel. He states that it is difficult and time-consuming to obtain this information by other means. The Government objects to his request on the grounds that it would permit defendants to confirm the identities of government witnesses. (Govt.'s Omnibus Opp'n 45.) Further, the Government notes that defendants may obtain the information from court dockets or by limited questioning of the suspected witness. (*Id.* at 45-46.)

This Court agrees with the Government. The safety of government witnesses must be protected, and the Government generally may withhold their identities to that end. There is no basis for finding that defendants are in great need of the information, nor are they unable to obtain it by methods that present less danger to the witnesses. Accordingly, defendants Eiland's motions to compel disclosure of counsel who represent government witnesses shall be DENIED.

*6. Motion to Compel Disclosure of Evidence Subject to Suppression Under 12(b)(3)*

**8** Defendant Thomas moves [538] to compel the Government to notify him of any evidence it intends to introduce at trial that may be subject to a motion to suppress under Fed.R.Crim.P. 12(b)(3). The Government made no response to defendant Thomas' motion. As a general matter, this Court notes that the Government is obligated to provide all such evidence to defendants for purposes of discovery. To the extent that the Government has not done so, it will be directed to comply. Accordingly, defendant Thomas' motion shall be GRANTED.

*7. Motions to Disclose Witnesses' Exposure to Other Testimony or Evidence*

Defendant Thomas moves [542] for an order requiring disclosure of any instances in which witnesses were present for the testimony of another, such as in a joint interview. (Thomas' Mot. [542] 1.) The Government objects on the grounds that there is no authority for such a disclosure request pertaining to pretrial interviews, and also represents that, in any event, no joint substantive interviews were conducted. (Govt.'s Omnibus Opp'n 46.) Based on the Government's statement that no such interviews took place, defendant Thomas' motion shall be DENIED AS MOOT.

In a separate motion [578], defendant Thomas requests disclosure of witnesses who have been exposed to wiretap evidence. The basis for this motion is the Government's statement in its Omnibus Opposition that the reliable source cited in an affidavit might have overheard conversations via wiretap rather than personally. The Government stipulated in court, however, that the source to which the affiant referred was a member of law enforcement, not a civilian witness. Accordingly, defendant Thomas' motion shall be DENIED.

*8. Motion for Early Release of Jencks,* Brady &

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: 2006 WL 516743, *8 (D.D.C.))

Page 68

Giglio *Material*

Defendant Thomas requests [546] that the Government release, in order to promote judicial economy, any and all Jencks, *Brady* and *Giglio* material for all government witnesses prior to the start of trial. (Thomas' Mot. [546] 1.) The Government cites security concerns in its opposition to the motion. (Govt.'s Omnibus Opp'n 47.) It proposes instead that this information be released to defense counsel the Thursday prior to each witness is expected to testify. (*Id.* at 48.)

The Court is mindful of the security concerns attendant in a trial such as this one. Where the Court has already taken note of the need to protect the jury, the same factors justify protection of government witnesses. The Court finds that the Government's proposal is reasonable given the Government's strong interest in protecting witnesses' identities as balanced against defendants' interest in pretrial discovery. *See United States v. Edelin,* 128 F.Supp.2d 23, 31 (D.D.C.2001) (Lamberth, J.) (citing *United States v. Higgs,* 713 F.2d 39, 44 (3d Cir.1983)). Accordingly, defendant Thomas' request for pretrial disclosure of this material shall be DENIED.

9. *Motion for Notice of Intention to Invoke Residual Hearsay Exception*

*9 Defendant Thomas [550] requests notice of the Government's intention to offer any statements that, while not specifically excepted from the hearsay rules, allegedly have equivalent circumstantial guarantees of trustworthiness. (Thomas' Mot. [550] 1.) Such statements would be offered under Rule 803(24). The Government responds that it does not intend to introduce any such evidence, and that it will notify defense counsel should its intentions change. (Govt.'s Omnibus Opp'n 34.) Accordingly, defendant Thomas' motion shall be DENIED AS MOOT.

10. *Motion for Disclosure of Rule 1006 Summaries*

Defendant Gaskins [491] moved for disclosure of charts, summaries or calculations the Government intends to use at trial. The Government responded that it "is in the process of preparing one summary exhibit which incorporates a timeline of major events in this case with selected wiretap intercepts," and will provide the same to counsel upon completion. (Govt.'s Omnibus Opp'n 49.) Since this motion is essentially undisputed, Gaskins' motion shall be GRANTED.

B. *Motions to Dismiss*

1. *Motion to Dismiss Counts & Overt Acts of Indictment Due to Improper Language*

Defendant Thomas moves [544] to dismiss counts and overt acts of the indictment that relate to the identification of Tyrone Thomas as a co-conspirator when he had become a government agent. (Thomas' Mot. [544] 1; Thomas' Reply [574] 6-8.) This mislabeling of Tyrone Thomas will result in prejudice to defendant Thomas, he argues, because the jury will ascribe more weight to Tyrone Thomas' testimony than is warranted. (Thomas' Mot. [544] 2; Thomas' Reply [574] 8.)

The Government notes that Tyrone Thomas continued to be labeled as a co-conspirator for the sake of consistency, and because the information he provided was based primarily on his role as a co-conspirator. (Govt.'s Omnibus Opp'n 55.) Moreover, it contends, no prejudice results from the labeling, and defense counsel will have the opportunity to clarify Tyrone Thomas' two roles and the impact it might have on the jury's evaluation of his testimony. (*Id.*)

This Court finds that the labeling of Tyrone Thomas as a co-conspirator after the point when he had become a government informant does not mandate dismissal of the counts or overt acts connected with such labeling. Any significance of the label may be explained by defense counsel. As it stands in the indictment, however, it does not represent prejudice to defendant Thomas that would require dismissal. Accordingly, defendant Thomas' motion shall be DENIED.

2. *Renewed Motion to Dismiss Indictment or for Grand Jury Ministerial Records*

Defendant Thomas moves [545] to dismiss the Fourth Superseding Indictment or, in the Alternative, for Release of Grand Jury Ministerial Records. In the few months since the Court denied his prior motion on this point, he claims that his renewed request is justified by new information about a grand jury leak and about the circumstances under which the grand jury was extended. (Thomas'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: 2006 WL 516743, *9 (D.D.C.))

Page 69

Mot. [545] 1.) The Government, in objecting to the motion, notes that defendant Thomas has failed to explain how either circumstance results in prejudice to him. The Court agrees. Defendant Thomas' motion presents no new basis for his argument, and no new facts have arisen that justify a renewed inquiry into the matter. Accordingly, this Court's denial of his original motion remains dispositive. Accordingly, for the reasons explained in the Court's October 26, 2005 Memorandum Opinion, defendant Thomas' motion shall be DENIED.

*3. Motion to Dismiss Charges and Counts Relating to Lost or Destroyed Evidence*

*10 Defendant Thomas requests [548] that all charges and counts relating to evidence that is no longer available should be dismissed, or in the alternative, that the Government should be prevented from presenting evidence that was not subject to review by defendant. (Thomas' Mot. [548] 1-2.) Specifically, defendant Thomas refers to a vehicle, allegedly owned by him, that was subject to a sweep for illegal narcotics while in police custody. (*Id.* at 1.) Since the Government has indicated that the vehicle is no longer available, defendant Thomas has had no opportunity to review the evidence or conduct his own tests. (*Id.*) For this reason, he suggests that any charges arising from this evidence should be dismissed, or, at a minimum, that the Government should be ordered not to present any such evidence. (*Id.* at 2.)

The Government responds that defendant Thomas has failed to show that the loss of the evidence was in bad faith, and as a result, has failed to provide any basis for dismissal of related counts or charges. (Govt.'s Omnibus Opp'n 56-57.)

Absent a showing of bad faith, failure of the police to preserve potentially useful evidence is not a violation of a defendant's constitutional right to due process. *Arizona v. Youngblood,* 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Defendant Thomas offers no reason to suspect bad faith on the part of the Government. As such, defendant Thomas' motion shall be DENIED.

*C. Motions for Leave to Join or Adopt Co-Defendants' Motions*

As this Court noted during the February 23-24 hearing, all motions to join or adopt specified motions of co-defendants shall be GRANTED. Motions requesting to join or adopt unspecified motions shall be DENIED. Defendant Butcher's Motion [533] to join shall be GRANTED IN PART as to those motions he specifies, and DENIED IN PART as to his general request to join all motions for which he has standing.

*D. Motions for Leave to Late File*

All motions for leave to late file, whether filed by defendants or the Government, shall be GRANTED.

*E. Motions to Suppress Evidence or for a Franks Hearing*

*1. Relevant Legal Standard*

Since defendants' motions to suppress make many of the same arguments, it will be useful to recount the applicable legal standard at the outset. This Court first notes that its standard of review of a magistrate's finding of probable cause is quite narrow: the Court must accord "great deference" to the issuing official's determination of probable cause, and need only determine that the magistrate had a "substantial basis" for concluding that probable cause existed. *See Illinois v. Gates,* 462 U.S. 213, 236-37, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This Court must find that the magistrate, based on totality of the circumstances, determined that there was a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. In determining whether probable cause exists, this Court must ascertain what facts were provided as a basis for the allegations of wrongdoing and whether there was some basis for believing those facts to be credible. *See, e.g., United States v. Thomas,* 989 F.2d 1252, 1254 (D.C.Cir.1993) (quoting *Gates,* 462 U.S. at 238). If this Court finds that probable cause existed, it need not inquire into the applicability of the good faith exception.

*11 Even where probable cause is found to exist, however, evidence obtained pursuant to a search warrant may nonetheless be suppressed. This occurs when the affiant, knowingly or with a reckless disregard for the truth, included a false statement in the affidavit, or omitted a statement that would have been material. *Franks v. Delaware,* 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). To

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: 2006 WL 516743, *11 (D.D.C.))

Page 70

obtain a hearing to determine whether the evidence must be suppressed, a defendant must also show that the falsehood (or material omission) was material to the finding of probable cause. *Id.* at 171-72. In order to obtain a hearing, however, defendants must provide a substantial preliminary showing: defendant must make specific allegations and must accompany them with a statement of supporting reasons. *Id.* Mere allegations or conclusory statements are insufficient. *Id.*

Given the similarity of defendants' arguments, it is also worth noting that, in a conspiracy investigation, it is not *per se* impermissible for a magistrate to find probable cause based, in part, on allegations of the activities of others, where those activities were in furtherance of the conspiracy and there is basis for finding that the defendant is involved in the conspiracy. Similarly, this Court has been directed to no case holding that a defendant's suspected commission of acts in furtherance of a criminal conspiracy is an insufficient basis, in and of itself, for probable cause to search his residence or vehicle as likely containing evidence of his activities. In fact, in this Circuit, the opposite is true: the Government need not show any more direct connection between the suspected criminal activities and the place to be searched than that persons involved in defendant's suspected activities typically keep evidence or contraband in the target locations. *See United States v. Johnson,* 2006 WL 305500 at *2, 2006 U.S.App. LEXIS 3247, at *5 (D.C.Cir. Feb.10, 2006) (citing *United States v. Thomas,* 989 F.2d 1252, 1255 (D.C.Cir.1993)) (holding that an affiant's statement that, in his or her experience, "drug dealers frequently keep business records, narcotics, proceeds from sales, and firearms in their houses" was sufficient to establish probable cause to search defendant's residence).

Accordingly, it is appropriate for the magistrate, in determining probable cause, to "draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Angulo-Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986). This standard is particularly relevant in conspiracy investigations. *See United States v. Heldt,* 668 F.2d 1238, 1254 (D.C.Cir.1981) (noting that, because "conspiratorial crimes are conducted with more secrecy than many other crimes," "search warrants that seek evidence of conspiracy, and otherwise meet the required standards, may extend to all relevant evidence of that crime").

*2. Defendant Eiland's Motions to Suppress Evidence*

**\*12** Defendant Eiland moves for suppression of evidence from an apartment [521] and a vehicle [522], including the seizure of four cellular telephones. He claims that both search warrants were lacking in probable cause and cannot be saved by the good faith exception. (Eiland's Mot. [521] ¶¶ 2, 6-12; [522] ¶¶ 8-11.) He argues that the specific facts recounted in the affidavits for each search warrant failed to connect the residence and vehicle to the defendant or the suspected illegal activity in a way that could support a finding of probable cause to search those two locations. (*Id.*) He further alleges that the affidavit in support of the search warrant for the vehicle omitted a material fact, namely, that a recent search of the van during a traffic stop had yielded no contraband or evidence. (*Id.* ¶¶ 10-11.)

The Government opposes the motions to suppress. As to the search of the apartment, it maintains that the affidavit supported a finding of probable cause that defendant Eiland was involved in illegal narcotics trafficking, and that he used his apartment to conduct illegal business (Govt.'s Omnibus Opp'n 12-13.) As to the search of the vehicle, the Government argues that the affidavit supported a finding of probable cause that defendant Eiland was involved in illegal narcotics trafficking, and that he likely kept evidence of his illegal business in his vehicle. (*Id.* at 27-28.) In any event, the Government argues that suppression is not warranted because it would have inevitably discovered the evidence obtained from the vehicle, upon a search incident to arrest and an inventory search. (*Id.* at 28.) Finally, the Government contends that the omission of the prior search of the van was rendered immaterial by the time elapsed. (*Id.*)

The affidavit as to the apartment contained references to defendant Eiland's conduct sufficient to support a finding that he was involved in illegal narcotics trafficking. It recites in detail evidence obtained from wiretaps, a reverse undercover operation involving suspected associates of defendant Eiland's, results of physical surveillance on several occasions, and information provided by confidential informants. (Sparks Aff. ¶¶ 11-23.) The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

affiant also noted that, in his extensive experience, persons involved in illegal narcotics trafficking frequently keep evidence of their activities in their residences. (*Id.* ¶ 4.d.) This might reasonably be believed to be particularly likely in conspiracy investigations, where the suspected criminal acts constitute a pattern of activity rather than an isolated incident. The apartment was believed to be defendant Eiland's residence. Taking the totality of these facts into account, this Court finds that the search warrant for the apartment was sufficient to support a finding of probable cause that evidence of illegal activity would be found in his apartment.

The affidavit as to the vehicle and cellular telephones contained references to defendant Eiland's conduct sufficient to support a finding that he was involved in illegal narcotics trafficking. It recites in detail evidence obtained from wiretaps and results of other searches. (Giannakoulias Aff. ¶¶ 11-23.) The affiant also noted that, in his extensive experience, persons involved in illegal narcotics trafficking frequently keep evidence of their activities in their vehicles and to use cellular telephones to facilitate their communications. (*Id.* ¶ 3.) Again, this might reasonably be believed to be particularly likely in conspiracy investigations, where the suspected criminal acts constitute a pattern of activity rather than an isolated incident. Considering the totality of the circumstances, this Court finds that the search warrant for the vehicles and the cellular telephones was sufficient to support a finding of probable cause that evidence of illegal activity would be found there.

*13 As to defendant Eiland's argument that the failure to report the prior search of the vehicle constitutes a material falsehood, this Court disagrees. Defendant fails to show that the prior search occurred close enough to the search at issue to render it material. Moreover, that a prior search revealed no contraband or evidence would not necessarily be material to a subsequent application, because intervening circumstances might well form the basis of probable cause.

Accordingly, defendant Eiland's motions to suppress or for a *Franks* hearing shall be DENIED.

*3. Defendant Miller's Motion to Suppress Evidence*

Defendant Miller moves [531] to suppress all physical evidence obtained during a search of a residence due to a lack of probable cause. (Miller's Mot. [531] 3.) He also argues that, even were probable cause found, the search warrant is invalid because it was "misleading in material respects." (*Id.* at 6.) He argues further that the search warrant was not executed properly, because the law enforcement officers failed to knock and announce their presence and purpose. (*Id.* at 8-9.) Finally, he argues that the information supporting the warrant had become stale by the time the search was completed. (*Id.* at 7-8.)

The Government asserts that the affidavit establishes probable cause. (Govt.'s Omnibus Opp'n 25-26.) In the alternative, it contends that the good faith exception applies. (*Id.* at 26.) It also characterizes defendant Miller's claims of material omissions as being too conclusory to trigger a *Franks* hearing; and his claims of the failure to knock and announce as similarly being to conclusory to warrant a hearing. (*Id.*)

The affidavit as to the apartment contained references to defendant Miller's conduct sufficient to support a finding that he was involved in illegal narcotics trafficking. It recites in detail evidence obtained from wiretaps and other physical surveillance, a reverse undercover operation, and information provided by confidential informants. (Sparks Aff. ¶¶ 9, 17-19, 26-51.) The affiant also noted that, in his extensive experience, persons involved in illegal narcotics trafficking frequently keep evidence of their activities in their residences. (*Id.* ¶ 4.d.) This might reasonably be believed to be particularly likely in conspiracy investigations, where the suspected criminal acts constitute a pattern of activity rather than an isolated incident. The apartment was believed to be defendant Miller's residence. Taking the totality of these facts into account, this Court finds that the search warrant for the apartment was sufficient to support a finding of probable cause that evidence of illegal activity would be found in his apartment.

This Court finds defendant Miller's other claims that the search warrant was deficient to be stated so broadly as to provide no basis on which to grant a *Franks* hearing. Defendant Miller fails to provide any specific allegations to support a finding of material omissions or staleness. Similarly, as to his argument that the officers failed to knock and announce, defendant Miller's motion includes only three sentences in support of this claim. He states

Slip Copy
(Cite as: 2006 WL 516743, *13 (D.D.C.))

Page 72

that they "made an illegal entry," that "there is nothing in the affiant's restatement of the warrant's execution" to show that the officers complied with the knock and announce requirement, and that "facts adduced at a hearing will show that the police did not otherwise gain lawful authority to enter." (Miller's Mot. [531] 9.) At the February 24, 2006 hearing, however, defendant Miller failed to present any testimony or other evidence in support of his broad claims, or even to make a proffer of evidence. The three vague, conclusory sentences in his motion are an insufficient basis, in and of themselves, to compel this Court to grant a *Franks* hearing.

*14 Accordingly, defendant Miller's motion to suppress shall be DENIED.

*4. Defendant Moore's Motion to Suppress Evidence or for a* Franks *Hearing*

Defendant Moore moves [425] to suppress all physical evidence obtained during a search of a residence due to a lack of probable cause. (Moore's Mot. [425] 3-4.) He also argues that law enforcement acted in bad faith in providing the affidavit. (*Id.* at 5-6.) Finally, he argues that, even were probable cause found, the inclusion of a false statement entitles him to a *Franks* hearing. (*Id.* at 6-7.)

The Government contends that the affidavit supports a finding of probable cause. (Govt.'s Omnibus Opp'n 14-19.) Evidence supporting a finding that defendant Moore was involved in narcotics trafficking along with several others was presented, including evidence obtained during searches of others associated with the organization, physical surveillance, and the results of an investigation into the alteration of the location's address. (*Id.* at 14-16.)

The affidavit as to the apartment contained references to defendant Moore's conduct sufficient to support a finding that he was involved in illegal narcotics trafficking. It recites in detail evidence obtained from wiretaps and other physical surveillance, results of other investigations, a reverse undercover operation, and information provided by confidential informants. (Sparks Aff. ¶¶ 16-19, 22-51.) The affiant also noted that, in his extensive experience, persons involved in illegal narcotics trafficking frequently keep evidence of their activities in their residences. (*Id.* ¶ 4.d.) This might reasonably be believed to be particularly likely in conspiracy investigations, where the suspected criminal acts constitute a pattern of activity rather than an isolated incident. The apartment was believed to be defendant Moore's residence. Taking the totality of these facts into account, this Court finds that the search warrant for the apartment was sufficient to support a finding of probable cause that evidence of illegal activity would be found in his apartment.

As to defendant Moore's request for a *Franks* hearing, this Court finds that the allegedly false statement does not meet the requirement for materiality. This Court does not find, as required under *Franks,* that had the statement regarding the reason for altering the address numbers been omitted, probable cause would be lacking. Even if it were material, defendant has provided no evidence that the statement was false, and included with knowledge of its falsity or with reckless disregard for the truth. Therefore, defendant Moore fails to establish that he is entitled to a *Franks* hearing. Accordingly, defendant's Moore's motion shall be DENIED.

*5. Defendant Thomas' Motions to Suppress*

Defendant Thomas filed two motions seeking suppression of evidence against him. The first [539], seeks to suppress consensual telephone calls between Timothy Thomas and Tyrone Thomas that have been collected by government agents. The basis for his motion is that the tapes are unintelligible, have been tampered with and are damaged. (Thomas' Mot. 3.) The Government objects, asserting that a pretrial determination on the authenticity and audibility of the tapes is neither warranted nor necessary. (Govt.'s Omnibus Opp'n 34.) This Court finds that the Government's intention to establish during trial that the tapes are authentic and audible is reasonable. Defendant Thomas has provided no basis for the necessity of a pretrial ruling. Accordingly, defendant Thomas' motion shall be DENIED.

*15 Defendant Thomas also moves [551] to suppress tangible evidence seized during the search of his residence, because it was based on an affidavit insufficient to establish probable cause. (Thomas' Mot. [551] 6.) He further argues that the good faith exception does not apply because the

Slip Copy  
(Cite as: 2006 WL 516743, *15 (D.D.C.))

Page 73

affidavit was so lacking in probable cause that it was unreasonable for the issuing magistrate to believe that probable cause existed. (*Id.* at 8.) Additionally, he claims that an omission rendered the affidavit misleading, entitling him to a *Franks* hearing. (*Id.* at 8-9; Thomas' Reply [574] 3-6.)

The Government contends that the affidavit supports a finding of probable cause. (Govt.'s Omnibus Opp'n 3-6.) Evidence supporting a finding that defendant Thomas was involved in narcotics trafficking along with several others was presented, including evidence obtained during searches of others associated with the organization, physical surveillance and information obtained from confidential sources. (*Id.* at 4-6.)

The affidavit as to the apartment contained references to defendant Thomas' conduct sufficient to support a finding that he was involved in illegal narcotics trafficking. It recites in detail evidence obtained from wiretaps and other physical surveillance, and information provided by reliable sources. (Giannakoulias Aff. ¶¶ 5-9.) The affiant also noted that, in his extensive experience, persons involved in illegal narcotics trafficking frequently keep evidence of their activities in their residences. (*Id.* ¶ 3.) This might reasonably be believed to be particularly likely in conspiracy investigations, where the suspected criminal acts constitute a pattern of activity rather than an isolated incident. The apartment was believed to be defendant Thomas' residence. Taking the totality of these facts into account, this Court finds that the search warrant for the apartment was sufficient to support a finding of probable cause that evidence of illegal activity would be found in his apartment.

As to defendant Thomas' request for a *Franks* hearing, this Court finds that his conclusory statement that a misleading omission tainted the search warrant to be insufficient to justify a *Franks* hearing. Accordingly, defendant Thomas' motion shall be DENIED.

### 6. *Defendant Gaskins' Motions to Suppress*

Defendant Gaskins filed two motions [490, 492] to suppress physical evidence seized from a searches of two of his residences. The first motion [490] is based on arguments that the warrant lacked probable cause and that law enforcement failed to knock and announce. (Gaskins' Mot. [490] 1;

Gaskins' Reply [574] 4-5.) As to probable cause, he argues that there was no basis to find that evidence or contraband would be present in the home. (Gaskins' Mot. [490] 2; Gaskins' Reply [574] 4.) He further argues that the affidavit was so lacking in probable cause that the good faith exception does not apply. (Gaskins' Mot. [490] 3.)

*16 It is the Government's position that the affidavit supports a finding of probable cause. (Govt.'s Omnibus Opp'n 23-24.) Evidence supporting a finding that defendant Gaskins was involved in narcotics trafficking conspiracy was presented, including evidence obtained during searches of others associated with the organization and physical surveillance. (*Id.* at 24.)

The affidavit as to the apartment contained references to defendant Gaskins' conduct sufficient to support a finding that he was involved in illegal narcotics trafficking. It recites in detail evidence obtained from wiretaps and other physical surveillance, and information provided by reliable sources. (Sparks Aff. ¶¶ 9-51.) The affiant also noted that, in his extensive experience, persons involved in illegal narcotics trafficking frequently keep evidence of their activities in their residences. (*Id.* ¶ 4.d.) This might reasonably be believed to be particularly likely in conspiracy investigations, where the suspected criminal acts constitute a pattern of activity rather than an isolated incident. The apartment was believed to be defendant Gaskins' residence. Taking the totality of these facts into account, this Court finds that the search warrant for the apartment was sufficient to support a finding of probable cause that evidence of illegal activity would be found in his apartment.

In support of his argument that law enforcement failed to knock and announce, defendant Gaskins presented the testimony of several witnesses at this Court's February 23, 2006 hearing. They all testified that they did not hear the law enforcement officers knock and announce, and that the officers and agents entered the apartment very quickly. Two FBI agents testified on behalf of the Government. All of defendant Gaskins' witnesses were either asleep at the time of execution, or were located some distance from the front door, such that they would not be expected to hear the knock and announce. The credible testimony of the agents consistently demonstrated that they knocked several times and loudly proclaimed their identity. Thus,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: 2006 WL 516743, *16 (D.D.C.))

Page 74

this Court finds that the Government has sufficiently demonstrated that the officers completed the knock and announce procedure. The residents' failure to hear it simply reflects the fact that they were sleeping or otherwise unable to hear. Accordingly, defendant Gaskins' motion shall be DENIED.

Defendant Gaskins' second motion [492] to suppress refers to a search of a different residence. He asserts that the search warrant was not based on probable cause, and in fact was so lacking that the officers cannot rely on the good faith exception. (Gaskins' Mot. [492] 4-5; Gaskins' Reply [574] 6-7.) The Government contends that the affidavit supports a finding of probable cause. (Govt.'s Omnibus Opp'n 9-10.) Evidence supporting a finding that defendant Gaskins was involved in narcotics trafficking conspiracy was presented, including evidence obtained during searches of others associated with the organization and physical surveillance. (*Id.*)

*17 The affidavit as to the apartment contained references to defendant Gaskins' conduct sufficient to support a finding that he was involved in illegal narcotics trafficking. It recites in detail evidence obtained from wiretaps and other physical surveillance and a reverse undercover operation. (Sparks Aff. ¶¶ 11-23.) The affiant also noted that, in his extensive experience, persons involved in illegal narcotics trafficking frequently keep evidence of their activities in their residences. (*Id.* ¶ 4.d.) This might reasonably be believed to be particularly likely in conspiracy investigations, where the suspected criminal acts constitute a pattern of activity rather than an isolated incident. The apartment was believed to be defendant Gaskins' residence. Taking the totality of these facts into account, this Court finds that the search warrant for the apartment was sufficient to support a finding of probable cause that evidence of illegal activity would be found in his apartment.

Accordingly, defendant Gaskins' motions shall be DENIED.

F. *Motions Relating to Miscellaneous Matters*

1. *Defendant Moore's Motion to Proceed* Pro Se *with Assistance of Standby Counsel*

Defendant Moore requests [567], and was granted in open court on February 24, permission to proceed *pro se*. Defendant's right to represent himself is well-established. *See Faretta v. California,* 422 U.S. 806, 816-17, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); 28 U.S.C. § 1654 (1948). Given that the Court has determined that defendant Moore's waiver of counsel was made knowingly and voluntarily, his motion to proceed *pro se* with Mr. Zucker remaining as standby counsel is GRANTED.

2. *Defendant Thomas' Motion for Implementation of Trial Procedures*

Defendant Thomas moves [552] for implementation of certain trial procedures. He requests the following: an exhibit list; summary and demonstrative exhibits; an order excluding prospective witnesses from the courtroom; an order that will allow defense counsel to bring civilian clothing for defendant Thomas to wear during the proceedings; and permission for counsel to bring and use a laptop computer in the courtroom. (Thomas' Mot. [552] 1-2.)

The Government opposes two of these requests. First, it resists the demand for an exhibit list as being wholly without authority, and infringing on the Government's privilege for attorney work-product. (Govt.'s Omnibus Opp'n 53- 54.) The Government also opposes defendant Thomas' request that this Court issue an order excluding prospective witnesses from trial to the extent that his request includes "case agents." (*Id.* at 54.) Such agents, the Government notes, are not excluded from observing the proceedings even if they are expected to testify. (*Id.*)

Defendant Thomas has failed to direct this Court to any basis of support for his request to be provided with an exhibit list. Accordingly, it shall be denied. As to exclusion of prospective witnesses, this Court notes that, pursuant to Rule 615, it will generally exclude witness from the courtroom upon the request of any party. The rule contains several exceptions, however, and the Government's intention to have seated at its table a case agent falls squarely within the exception for investigative agents included in the rule. Accordingly, the Court shall grant defendant Thomas' request to exclude prospective witnesses only to the extent they are not excepted from the rule.

*18 As to defendant Thomas' three other requests,

Slip Copy
(Cite as: 2006 WL 516743, *18 (D.D.C.))

Page 75

the Government has no opposition. (*Id.*) The Government has already indicated its intention to provide a summary Rule 1006 exhibit as soon as it is complete. *See supra* Part II.A.10. The Government does not oppose defendant Thomas' request to wear civilian clothing, nor to his attorney's request to use a laptop computer in the courtroom. (Govt.'s Omnibus Opp'n 49.) This Court finds these requests to be reasonable. Accordingly, they shall be granted. Defendant Thomas' motion, then, shall be GRANTED IN PART, as to his request for a Rule 1006 exhibit, his request to wear civilian clothing, and his attorney's request to use a laptop computer in the courtroom, and DENIED IN PART, as to his request for an exhibit list and as to his request that all prospective witnesses, including case agents, be excluded from the proceedings.

*3. Defendant Moore's Motion for Recusal*

Defendant Moore requested [503] that the judge in this matter recuse himself due to contacts with defendant Moore in a prior case before this Court. (Moore's Mot. [503] ¶¶ 1-7.) Defendant Moore concedes that the duty to recuse based on information learned about a defendant generally arises only where that information was obtained from an extra-judicial source, that is, outside one's role as a judicial officer. (*Id.* ¶ 7.) He maintains, however, that the judge's beliefs or opinions formed during his prior interaction with defendant Moore give rise to a reasonable question of his impartiality, and as such, mandate recusal. (*Id.* ¶¶ 7-8.) The Government opposes defendant Moore's motion on the basis that the allegations are unsupported and insufficient to require recusal. (Govt.'s Omnibus Opp'n 53.)

Defendant Moore moves for disqualification pursuant to 28 U.S.C. § 455(a) (1948), which provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Defendant Moore's allegation of impartiality rests on two claims: that the judge "denied defendant employment in an unrelated case" and that he "has heard cases involving violent gangs' promotion of Omerta." (Thomas' Mot. [503] ¶ 8.) Even accepting these claims as true, they fail to provide any basis for recusal due to impartiality. That the Court has, in its judicial capacity, previously encountered defendant Moore and evidence relating to "Omerta" that may be similar to evidence presented in this case, in and of itself, plainly fails to support a claim of prejudice, bias, or lack of impartiality.

Defendant correctly notes that typically, the circumstances giving rise to the appearance of bias or prejudice must stem from an extrajudicial source. *See Liteky v. United States,* 510 U.S. 540, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *United States v. Microsoft Corp.,* 253 F.3d 34, 115 (D.C.Cir.2001) (noting that it would be "extraordinary to disqualify a judge for bias or appearance of partiality when his remarks arguably reflected what he learned, or what he thought he learned, during the proceedings"); *see also United States v. Barry,* 961 F.2d 260, 263 (D.D.C.1992) (Jackson, J.). Here, the information was obtained in a judicial capacity, and defendant has failed to provide a basis for applying to this case the limited exceptions to that rule. Accordingly, defendant's motion for recusal shall be DENIED.

*4. Defendant Moore's Motion to Transfer Venue*

*19 Defendant Moore requests [498], under Fed.R.Crim.P. 21(a), that this matter be transferred to a district outside the District of Columbia. (Moore's Mot. [498] ¶ 1.) Such a move is necessary, he states, because the attention he has received in District of Columbia media will prevent him from obtaining a fair trial. (*Id.* ¶¶ 2-6.) The Government opposes the motion on the grounds that defendant Moore has failed to show a reasonable likelihood of prejudice resulting from the media coverage. (Govt.'s Omnibus Opp'n 52.)

Federal Rule 21(a) "is intended for cases in which prejudice in the community will make it difficult or impossible to select a fair and impartial jury." 2 Charles Alan Wright, Federal Practice & Procedure § 342 (1982). In evaluating the likelihood that publicity will affect defendant's right to a fair trial, a critical factor is how close in time the publicity is to the trial. *Wansley v. Slayton,* 487 F.2d 90, 93-94 (4th Cir.1973) (citing *Beck v. Washington,* 369 U.S. 541, 556, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962) (concluding that a lapse of nine and a half months was sufficient time for the impact of any prejudicial publicity to subside)); *United States v. Bowe,* 360 F.2d 1, 11 (2d Cir.), *cert. denied,* 385 U.S. 961, 87 S.Ct. 401, 17 L.Ed.2d 306 (1966) (holding that since the publicity was twelve weeks old at the time

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: 2006 WL 516743, *19 (D.D.C.))

Page 76

the jury was empaneled, it was highly unlikely that it was retained in the jurors' memories)). In this case, all of the publicity cited by defendant Moore occurred well over a year ago. This Court finds that any prejudice that may have occurred at the time of publication of the news reports has most likely been forgotten by prospective jurors. As to defendant Moore's concern that publicly-available court records have contributed to pretrial publicity, this Court finds no basis for concluding that they provide the kind of "media attention" that Rule 21(a) seeks to protect against. While publicly available, they are by no means widely disseminated. They would likely be reviewed by very few members of the public. There is absolutely no indication that they present the dangers that mainstream media reports raise. Therefore, this Court does not consider a change of venue to be necessary to protect defendants' rights to a fair trial. Accordingly, defendant Moore's motion shall be DENIED.

*5. Defendant Miller's Motion to Sever*

Defendant Miller moves [534] to sever his case from that of his co-defendant Timothy Thomas. He claims that severance is warranted because defendant Thomas may provide exculpatory testimony at trial, and because the Government may introduce at trial statements made by defendant Thomas that are incriminating of defendant Miller, in violation of *Bruton*. (Miller's Mot. [534] 4-6.) The Government opposes severance, arguing that defendant Miller's motion is untimely, that the defendants were properly joined in the indictment, that defendant Miller's reliance on *Bruton* is misplaced because the Government would seek to introduce any such statements under the co-conspirator exception, and because there is no basis for expecting defendant Thomas to testify, of if he does, to provide exculpatory testimony. (Govt.'s Omnibus Opp'n 59.)

*20 This Court has already considered the propriety of joinder in this matter in its Memorandum Opinion and Order dated December 8, 2005. Even though defendant Miller elected not to file a motion for severance, this Court considered each trial group and determined that the defendants were properly joined and that severance was not warranted. As to defendant Miller's assertion that *Bruton* mandates severance, this Court has already determined, *supra* Part II.A.2, several motions relating to *Bruton* statements. As there noted, the Government has indicated that it does not intend to introduce any co-conspirator or co-defendant statements that lack an independent basis of admissibility. Therefore, the *Bruton* issue is moot. As to defendant Miller's final argument relating to the possibility of exculpatory evidence, this Court finds that his bare assertion, without any support, that defendant Thomas will testify and will exculpate defendant Miller is insufficient to justify severance at this time. Accordingly, defendant Miller's motion shall be DENIED.

### III. CONCLUSION

For the foregoing reasons, this Court has determined that all motions [296, 508, 525, 533, 517, 536, 547, 556, 557, 558, 565, 566, 581] to join or adopt specified motions of co-defendants shall be GRANTED; defendant Eiland's motion [525] to join or adopt unspecified motions of co-defendants shall be DENIED; defendant Butcher's Motion [533] to join shall be GRANTED in part as to those motions he specifies, and DENIED in part as to his general request to join all motions for which he has standing; all motions [529, 564, 576] for leave to late file shall be GRANTED; two motions [491, 538] relating to discovery shall be GRANTED; all other motions relating to discovery [151, 211, 346, 386, 393, 419, 499, 502, 518, 520, 523, 524, 526, 530, 532, 535, 537, 540, 541, 542, 543, 546, 549, 550, 555, 578] shall be DENIED; all motions to dismiss [151, 544, 545, 548] shall be DENIED; and all motions [425, 490, 492, 497, 521, 522, 531, 539, 551] to suppress or for a *Franks* hearing shall be DENIED.

As to the miscellaneous motions, defendant Miller's Motion [534] to Sever Defendants shall be DENIED; defendant Moore's Motion [503] for Recusal shall be DENIED; defendant Moore's Motion [498] to Transfer Due to Prejudicial Publicity shall be DENIED; and defendant Thomas' Motion [553] *in Limine* Regarding Admission of Wiretap Calls shall be DENIED. Defendant Moore's Motion [567] to Proceed *Pro Se* with the Assistance of Standby Counsel shall be GRANTED; and defendant Thomas' Motion [552] for Implementation of Trial Procedures shall be GRANTED IN PART and DENIED IN PART.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                       **Page 77**
**(Cite as: 2006 WL 516743, \*20 (D.D.C.))**

District Judge, March 1, 2006.

Slip Copy, 2006 WL 516743 (D.D.C.)

   Motions, Pleadings and Filings (Back to top)

. 1:04cr00379 (Docket) (Aug. 20, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.